UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 ------------------------------------------------------------------- X

JOHN BAL, in the capacity as a Democratic Candidate
for the New York State Assembly,

                         Plaintiff,                              16 Civ. 2416 (PKC)

                    –against–

MANHATTAN DEMOCRATIC PARTY, *et al.*,

                         Defendants.

 ------------------------------------------------------------------- X

### DEFENDANTS' MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFF'S MOTION
### FOR SUMMARY JUDGMENT AND
### IN SUPPORT OF THE DEFENDANTS'
### <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>

### <u>INTRODUCTION</u>

Plaintiff has moved for summary judgment in this case, and Defendants have cross-moved for Summary Judgment. This case involves a passionate, but misplaced, intra-Democratic Party dispute about the manner in which the Manhattan Democratic Party treated Plaintiff when he declared himself a candidate for a vacancy arising as a result of the conviction of former NY State Assembly Leader Sheldon Silver. Defendants submit, and discuss below why under settled law, the Democratic Party and its officers and employees are not state actors and therefore not subject to Federal Court jurisdiction under 42 U.S.C. Section 1983. We further argue that even if a Section 1983 case were appropriate, plaintiff has improperly failed to utilize state remedies available to him which could have achieved timely relief (if he had stated a claim), and that nothing in the facts demonstrates a meritorious claim under either the Manhattan Democratic Party Rules or the NY State Election Law, much less the First or Fourteenth Amendments.

## STATEMENT OF FACTS

The Manhattan Democratic Party has at all relevant times been governed by Rules (Exhibit A) adopted by its County Committee, a legislative body elected by voters registered with the Democratic Party, every odd numbered year, *i.e.*, every two years.

The laws concerning election of a County Committee are set forth at Section 2-104 of the NY State Election Law, as follows:

> 1. The county committee of each party shall be constituted by the election in each election district within such county of at least two members and of such additional members, not in excess of two, as the rules of the county committee of the party within the county or the statement filed pursuant hereto may provide for such district, proportional to the party vote in the district for governor at the last preceding gubernatorial election, or in case the boundaries of such district have been changed or a new district has been created since the last preceding gubernatorial election, proportional to the party vote cast for member of assembly or in the event there was no election for member of assembly, then proportional to the number of enrolled voters of such party in such district on the list of enrolled voters last published by the board of elections, excluding voters in inactive status. In a county in which no additional members are provided for by the rules of the county committee or the statement filed pursuant hereto the voting power of each member shall be in proportion to such party vote or, if the election district which such member represents was created or changed since the last election for member of assembly, proportional to such party enrollment. In a county in which additional members are so provided for, on the basis of the party vote or enrollment in election districts within such county, each member shall have one vote. Each member of a county committee shall be an enrolled voter of the party residing in the county and the assembly district from which or in the assembly district containing the election district in which such member is elected except that a member of a county committee who, as a result of an alteration of assembly district lines, no longer resides within such assembly district may continue to serve for the balance of the term to which he was elected…
>
> 3. Notwithstanding the provisions of subdivision one of this section, a county committee of a party shall be legally constituted if twenty-five per centum of the committeemen required to be

elected in such county, as provided in subdivision one of this section, have been elected.

Section 2-106 of the Election Law provides that:

1. Members of the state and county committees shall be elected at the primary election as herein provided.

2. Members of the state committee shall be elected biennially…

4. Members shall hold office until the next election at which members of the committee are elected.

One of the roles of the County Committee is to select Democratic Party nominees for State and Federal elections (other than Statewide positions) where a vacancy is created by the death or resignation of an elected official, generally a Congress Member, a State Senator, or an Assembly Member.

Section 6-116 of the NY State Election Law states that:

"A party nomination of a candidate for election to fill a vacancy in an elective office required to be filled at the next general election, occurring after seven days before the last day for circulating designating petitions or after the holding of the meeting or convention to nominate or designate candidates for such, shall be made, after the day of the primary election, by a majority vote of a quorum of the state committee if the vacancy occurs in an office to be filled by all voters of the state, and **otherwise by a majority vote of a quorum of the members of a county committee or committees last elected in the political subdivision in which such vacancy is to be filled, or by a majority of such other committee as the rules of the party may provide.** A certificate of nomination shall be filed as provided for herein."

A nomination by the Party to run for the vacancy in an Assembly seat is made by a vote of the members of the County Committee in that Assembly District. The Rules of the Manhattan Democratic Party provide for a procedure to fill vacancies in County Committee positions. Those rules, at Article V, provide that:

3.   Nominations for Public Office.   (a) Whenever a Party nomination for a public office to be filled at a general or **special**

> **election** is not made at a primary election or by judicial
> nominating convention, or when no valid designating petition is
> filed with the board of elections (1) such nomination shall be made
> by the Executive Committee if for a public office to be filled by
> the voters of a political subdivision whose boundaries are
> coterminous with the County of New York or the Borough of
> Manhattan, and any vacancy in a nomination so made shall be
> filled by the Executive Committee or a subcommittee appointed by
> the Executive Committee for that purpose, and (2) **such
> nomination shall be made by the appropriate District
> Committee if for a public office to be filled by the voters of a
> political subdivision wholly or partly contained within, but
> embracing only a part of, the County of New York or Borough
> of Manhattan,** and any vacancy in a nomination so made shall be
> filled by a subcommittee appointed by said District Committee for
> that purpose.

In Manhattan, unlike elsewhere in the State, Party Rules allow the division of Assembly
Districts into Parts, so an Assembly District may have two, three, or even four parts. Each Part
has a male and female District Leader, and each Part has its own Divisional County Committee.
Vacancies in County Committee slots are filled by vote either by vote of the full County
Committee at its bi-annual Organizational Meeting (based on nominations made by District
Leaders) or by vote of the Divisional County Committee. Nowhere is this described in State
Law; these committees and their composition, their meeting rules, notice for meetings, etc., are
all guided by the Party Rules.

Once a County Committee votes to designate a candidate to run for a vacancy it submits
that nomination to the NYC Board of Elections. There then exists a procedure to object to such a
nomination. Section 6-164 of the NY Election Law provides:

> Written objections to any certificate of designation or nomination
> or to a nominating or designating petition or a petition for
> opportunity to ballot for public office or to a certificate of
> acceptance, a certificate of authorization, a certificate of
> declination or a certificate of substitution relating thereto may be
> filed by any voter registered to vote for such public office and to a
> designating petition or a petition for opportunity to ballot for party
> position or a certificate of substitution, a certificate of acceptance

or a certificate of declination relating thereto by any voter enrolled to vote for such party position. Such objections shall be filed with the officer or board with whom the original petition or certificate is filed **within three days after the filing of the petition or certificate to which objection is made, or within three days after the last day to file such a certificate, if no such certificate is filed** except that if any person nominated by an independent nominating petition, is nominated as a party candidate for the same office by a party certificate filed, or a party nomination made after the filing of such petition, the written objection to such petition may be filed within three days after the filing of such party certificate or the making of such party nomination. When such an objection is filed, specifications of the grounds of the objections shall be filed within six days thereafter with the same officer or board and if specifications are not timely filed, the objection shall be null and void. Each such officer or board is hereby empowered to make rules in reference to the filing and disposition of such petition, certificate, objections and specifications.

The period to file such objections is very short, because the Special Election to fill the vacancy follows usually in 30 days. If that objection is not acted upon to the objector's satisfaction, he or she may go to Court pursuant to Section 16-102

The Election Law contains a procedure to challenge a party's nomination, set forth at Section 16-102:

> 1. The nomination or designation of any candidate for any public office or party position or any independent nomination, or the holding of an uncontested primary election, by reason of a petition for an opportunity to ballot having been filed, or the election of any person to any party position may be contested in a proceeding instituted in the supreme court by any aggrieved candidate, or by the chairman of any party committee or by a person who shall have filed objections, as provided in this chapter, except that the chairman of a party committee may not bring a proceeding with respect to a designation or the holding of an otherwise uncontested primary.

> 2. A proceeding with respect to a petition shall be instituted within fourteen days after the last day to file the petition, or within three business days after the officer or board with whom or which such petition was filed, makes a determination of invalidity with respect to such petition, whichever is later; except that a proceeding with respect to a petition for a village election or an independent

nomination for a special election shall be instituted within seven days after the last day to file the petition for such village election or independent nomination or within three business days after the officer or board with whom or which such petition was filed, makes a determination of invalidity with respect to such petition, whichever is later. ***A proceeding with respect to a primary, convention, meeting of a party committee, or caucus shall be instituted within ten days after the holding of such primary or convention or the filing of the certificate of nominations made at such caucus or meeting of a party committee.***

3. The court may direct reassembling of any convention or the holding of a new primary election, or caucus where it finds there has been such fraud or irregularity as to render impossible a determination as to who rightfully was nominated or elected.

A judicial proceeding is to be brought within 10 days of the Party committee meeting if the results or conduct of that meeting are being challenged.

On November 30, 2015 Assembly Member Sheldon Silver was convicted of several felonies and was forced to immediately vacate his office, which was Assembly member for the 65th Assembly District ("AD"). On January 30, 2016 Governor Cuomo ordered a Special Election to fill the vacated seat and ordered that that election occur on April 19, 2016.

Under the Party Rules cited above, the County Committee for the 65th Assembly District had the responsibility to nominate a Democratic Party nominee for the position. The names and addresses of those who had been elected to the County Committee in September 2015 was public record. Each had had to file petitions with the NYC Board of Elections in order to be placed on the ballot, and, since the petitions are public record, that Board supplies that information upon request. Thirty-nine County Committee positions were not filled during the Democratic Primary in September 2015, and they were filled, upon nomination of various District Leaders (as provided in the Party Rules), by vote of the full County Committee on September 29, 2015. This was an open, public meeting.

Manhattan Democratic Party Leader Keith Wright called a meeting of the 65th AD County Committee for February 7, 2016.

At his request, Plaintiff Bal, who asserted that he was a candidate for the nomination, was given a complete list of all the District County Committee members on December 31, 2015, six weeks before the District County Committee meeting.

Mr. Bal also was given a copy of the Party Rules. Those Rules provide, at Article V, Section 8, that "Unless otherwise provided herein or in the rules of the appropriate committee, the proceedings of the County Committee and all committees and subcommittees organized hereunder shall be governed by the latest edition of Robert's Rules of Order, Newly Revised." Robert's Rules governed all procedural issues at the District meeting.

There were at least four candidates, three of whom were District Leaders, two from the same Part of the 65th AD, and the same Democratic Party Club, who had significant support prior to the February 7 meeting. For Equal Protection purposes, one was a Chinese American female, one was an Italian-American female, one was an Indian-American female, and one was a white Jewish male. All had been elected to office in contested elections in 2015.

Mr. Bal had no support. On February 1, 2016 he "dropped out" of the race, since he had no County Committee member willing to nominate him.

The list showing the "weighted vote," the vote cast by each County Committee member, which was determined by tabulating the number of votes received by Governor Cuomo on the Democratic Party Line in the November 2014 election, was not finalized until several days before the February 7, 2016 meeting. The 2014 vote, by Election District, however, was public record, available online at the NYC Board of Elections website.

At the District County Committee meeting held on February 7, 2016, District Leader Alice Cancel received the plurality of votes and was declared the Democratic Party nominee.

Following that designation Mr. Bal did not file any Objection with the NYC Board of Elections pursuant to Election Law 6-164

At no time did Mr. Bal file a proceeding in State Supreme Court pursuant to Section 16-102 of the Election Law.

Ms. Cancel went on to win the April 19, 2016 Special Election. She served, however, only until the end of 2016. There was a Democratic Primary election for the position in September 2016, won by another candidate, Yuh-Line Niou.  Mr. Bal was not on the ballot, having failed to submit the required number of signatures on a nominating petition. Ms. Niou was elected to the Assembly in the November 2016 General Election.

There was another Democratic Party primary for the position on September 13, 2018. Ms. Niou was again chosen as the Democratic nominee.

In 2017 the Manhattan Party went through its biennial reorganization. The Party did not have a functioning Ethics Committee prior to that date, but it now does. That Committee will take up Mr. Bal's various complaints, one or more of which may state actual violations of Party Rules.

There is no law which dictates what must be in a Party's Rules regarding vacancy elections, other than the Election Law provisions cited above.

## ARGUMENT

## POINT I

### THIS COURT LACKS JURISDICTION
### AS A MATTER OF LAW

The plaintiff bears the burden of demonstrating that subject matter jurisdiction

exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must not only allege a deprivation of

a federal right, privilege or immunity, but must allege that the deprivation was attributable, at

least in part, to a person acting under color of state law." *Fulani v. McAullife*, 2005 WL

2276881, at *3 (S.D.N.Y. 2005). In Fulani, the court refused to hold that the Democratic

National Committee was a state actor. The fundamental problem with Mr. Bal's lawsuit is that

like in *Fulani*, there are no state actors involved and no action taken under color of state law that

would give a Federal Court jurisdiction.  As the District Court recently ruled in *De La Fuente v.*

*Iowa Democratic Party*, 2016 WL 9224895 (SD Iowa Central Division 2016), a complaint

against a political party for not following its rules is nothing more than a "garden variety" breach

of contract claim under state law.  A Section 1983 claim cannot be based on an alleged breach of

contract.  *Ferrell v. Norris*, 441 F.App'x 399, 400 n.2 (8th Cir. 2011).

The Democratic Party and its officials are not "state actors."  When a non-state actor is

sued under § 1983, an initial inquiry asks whether (1) the party engaged in the conduct

complained of under color of state law, and (2) whether the alleged conduct deprived a person of

rights, privileges or immunities guaranteed under the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981); and *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

In *Bendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982), the Supreme Court held that state

action "cannot be found unless the alleged infringement of federal rights is fairly attributable to

the state."  The method of how a party chooses a nominee to run in a state election involves no

state action.  All New York State Election Law at § 6-114 states is:  "Party nomination for an

office to be filled at a special election shall be made in the manner prescribed by the rules of the

party."  There is no requirement in the law that the party hold a vote, or a convention, or that the

procedure involve something other than throwing darts at a dartboard.  In *Democratic Party of*

*the United States v. Wisconsin*, 450 U.S. 107, 125 n.31 (1981), a case involving selection of

Presidential electors, the Supreme Court stated:

> "Any connection between the process of selecting electors and the
> means by which political party members associate to elect
> delegates to party nominating conventions is so remote and
> tenuous as to be wholly without constitutional significance."

Given the lack of direction given by state law and the lack of governmental assistance,

there is no basis for a claim that any defendant here acted under color of state law.  *Jesse Jackson*

*v. Michigan State Democratic Party*, 593 F.Supp. 1033 (ED Mich. S.D. 1984); and *see Kurita v.*

*State Primary Board of the Tennessee Democratic Party*, 472 F.App'x 398 (6th Cir. 2010),

affirming *Kurita v. State Primary Board, etc.*, 2008 WL 4601574 *9 (MD Tenn. Nashville Div.

2008) ("The Court does not agree with Plaintiff's proposition that the state legislature's decision

to permit political parties to resolve their own nominating contests prior to the general election

constitutes state action").

## POINT II

### EVEN IF THIS COURT HAS JURISDICTION
### PLAINTIFF HAS FAILED TO EXHAUST HIS
### STATE REMEDIES REQUIRING DISMISSAL

Although the federal courts have not, in cases like this, barred consideration of a case

which (a) largely involves issues of state law, and (b) could easily and in a timely manner have

been decided in a state court, the Supreme Court in *McNeese v. Board of Ed. for Community Unit*

*School Dist. 187, Cahokia, Ill*.,  373 U.S. 668, 673 (1963) held that "[w]here strands of local law are woven into the case that is before the federal court, we have directed a District Court to refrain temporarily from exercising its jurisdiction until a suit could be brought in the state court. *See Railroad Comm'n of Texas v. Pullman Co*., 312 U.S. 496; *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478; *Harrison v. N.A.A.C.P.,* 360 U.S. 167. Thus we have stayed the hands of a Federal District Court when it sought to enjoin enforcement of a state administrative order enforcing state law, since any federal question could be reviewed when the cases came here through the hierarchy of state courts." And *see Burford v. Sun Oil Co*., 319 U.S. 315, 318-319 (1943) ("Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, 'refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest'; for it 'is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.")

The Second Circuit has also made similar observations where the state remedy is adequate. In *Eisen v. Eastman*, 421 F.2d 560, 569 (2d Cir. 1969), the Court held:

> Exhaustion of state administrative remedies is not required where the administrative remedy is inadequate, as in McNeese, or where it is certainly or probably futile, as in Damico, Smith and Houghton. A quite different situation would be presented, for example, when a complaint alleged that a subordinate state officer had violated the plaintiff's constitutional rights by acting because of bias or other inadmissible reasons, by distorting or ignoring the facts, or by failing to apply a constitutional state standard, and the state has provided for a speedy appeal to a higher administrative officer, as New York City has done here.

In *Pettengill v. Putnam County School District, Unionsville, Missouri*, 472 F.2d 121 (8th Cir. 1973), the Circuit Court refused to interject itself into an election controversy. The court

found no constitutional grounds for intervention 'in the absence of aggravating factors such as denying the right of citizens to vote for reasons of race, or fraudulent interference with a free election by stuffing of the ballot box, or any other unlawful conduct which interferes with the individual's right to vote." And *see Curry v. Baker*, 802 F.2d 1302, 1314,1315-16 (11th Cir. 1986) ('Unlike systematically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a [constitutional violation] … ." "Subject to Specific exceptions, federal courts should not be involved in settling state election disputes. Sound reasons grounded in both law and public policy establish that far better forums for disputes involving elections to state offices are found in the party machinery and the court system of the affected state.")*; Hennings v. Grafton*, 523 F.2d 861 (7th Cir. 1975); *Powell v. Power*, 436 F.2d 84 (2d Cir. 1970).

Plaintiff here has utterly avoided what is set forth in the NY Election Law as an adequate and timely remedy**.**  He asserts that he wrote to the State Board of Elections (rather than file in NYC, as required by law), and was told by the State Board's Director of Enforcement that there were no statutory violations present in the County Committee's selection of Ms. Cancel. He then did not proceed in State Court, even though an expedited procedure was available which could have actually resulted in a reconvening of the County Committee. This Court should be loath to get involved in a lawsuit which involves intricate questions of Party Rules and their interplay with State Election Law, and should not invite aggrieved candidates to utilize the Federal Courts by framing what are really alleged Election Law violations as Constitutional claims.

## POINT III

## EVEN IF THIS COURT HAS JURISDICTION TO PROCEED ON THE MERITS THE FACTS WARRANT JUDGMENT IN FAVOR OF DEFENDANTS

The undisputed facts show that at best, Plaintiff had a complaint that Democratic Party staff did not bend over backwards to accommodate his demands for information which was available elsewhere. What Plaintiff seems to complain about is that District Leaders had an advantage over a non-District Leader candidate, and he argues that "non-District Leader candidates" is a protected class under the Fourteenth Amendment.

The Plaintiff failed to state a violation of equal protection on the actions or non-actions of the MDP or Cathleen McCaddon.  This claim should fail because he is not part of a suspect class nor was he denied a fundamental right, and thus his claim is insufficient to state a constitutional violation.  Mere willfulness, without the specific intent to deprive Plaintiff of a fundamental right, is insufficient to establish an Equal Protection claim. *Gelb v. Bd. of Elections of City of New York*, 224 F.3d 149 (2d Cir. 2000).  It is thirty-year-old doctrine in this Circuit that a § 1983 action invoking the *Equal Protection Clause* is not available to remedy *election* process errors in the absence of a showing of "intentional or purposeful discrimination." *Gelb v. Bd. of Elections of City of New York*, 224 F.3d 149 (2d Cir. 2000) (citing *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970)).

The rights of voters are among the most fundamental in our constitutional structure. *See Burdick v. Takushi,* 504 U.S. 428, 433 (1992); *Anderson v. Celebrezze,* 460 U.S. 780, 788 (1983). However, candidacy is not a fundamental right in our political system, *Clements v. Fashing,* 457 U.S. 957, 963 (1982), and "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or

to choose among candidates." *Id.*  "As a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown,* 415 U.S. 724, 730 (1974); *Fulani v. McAuliffe*, 2005 WL 2276881, at *3 (S.D.N.Y. 2005).

Even when viewed through Plaintiff's description of events, he was denied no fundamental right. He had the ability, for a five-week period prior to the County Committee meeting to call or write the 150 or so County Committee members, to appear at meetings of the various political clubs which voted to endorse candidates, to find someone who could have nominate him as per Robert's Rules of Order, and to make a speech from the floor.  Having not been handed the information he wanted on a silver platter, he dropped out.

There is no merit to his Equal Protection claim, and no demonstration whatsoever of how his First Amendment right to speak or to run was undermined by a system designed to wind up with one winner and many losers.

### <u>CONCLUSION</u>

For the reasons aforedescribed the Court should deny Plaintiff's Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment.

Dated: October 9, 2018

ADVOCATES FOR JUSTICE
CHARTERED ATTORNEYS
*Attorneys for Defendants*

By:_____/s/_____
        Arthur Z. Schwartz (AZS 2683)
225 Broadway Suite 1902
New York, N.Y. 10007
212-285-1400
aschwartz@afjlaw.com