UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN BAL, in the capacity as a Democratic
Candidate for the New York State Assembly,

                          Plaintiff,                          16-cv-2416 (PKC)

          -against-                                            OPINION
                                                              AND ORDER

MANHATTAN DEMOCRATIC PARTY, et al.,

                          Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff John Bal, proceeding pro se, brings this action against the Manhattan

Democratic Party ("MDP"), the New York County Democratic Committee ("NYCDC"), Keith

Wright, personally and in his capacity as leader of the NYCDC, and Cathleen McCadden,

personally and in her capacity as Executive Director of the NYCDC.[1]  Pursuant to 42 U.S.C.

§ 1983, he claims that defendants violated the First and Fourteenth Amendments to the U.S.

Constitution by creating severe and unjustified burdens on his right to campaign for the

Democratic Party nomination to fill the vacated 65th Assembly District seat in the New York State

Assembly in the spring of 2016.  (Compl. ¶¶60−67; Doc 2.)  He seeks $1 million in damages.  (Id.,

Prayer for Relief.)  He also asks the Court to declare the MDP's nominating process to select a

candidate for the 65th Assembly District seat void and cancel all votes entered for certain

candidates in the nominating process.  (Id.)  Both parties have filed motions for summary judgment.

(Docs 105, 120.)

---

[1] The Complaint also named the New York State Board of Elections as a defendant and sought injunctive relief against
the Board, which was denied. (Docs 2, 13.)  Mr. Bal has since voluntarily dismissed all claims against the Board of
Elections. (Doc 43.)

For the reasons set forth below, defendants' motion is GRANTED in full and plaintiff's motion is DENIED in full.

BACKGROUND AND PROCEDURAL HISTORY

I.    <u>New York State Election Law</u>

Political parties in New York State operate through committees. N.Y. Election Law § 2-100 <u>et seq</u>. Each political party determines for itself which committees other than state and county committees shall be formed and in what manner such committees shall be organized. N.Y. Election Law § 2-100. ("Party committees shall consist of a state committee, county committees, and such other committees as the rules of the party may allow."). "Each committee may prepare rules for governing the party within its political unit." N.Y. Election Law § 2-114(1). The New York County Democratic Party, for instance, is run by a County Committee, an Executive Committee, and District Committees for political districts including Assembly Districts. District Committees consist of all members of the County Committee and district leaders elected from their respective districts. (Rules and Regulations of the Democratic Party of the County of New York ("Rules and Regulations"), Art. 1; Doc 104 Ex. A; Doc 122 Ex. A.)

Pursuant to New York Election Law § 6-114, "[p]arty nominations for an office to be filled at a special election shall be made in the manner prescribed by the rules of the party." The Rules and Regulations for the New York County Democratic Party provide for procedures to nominate candidates for special elections. Article V of the Rules provides that,

> [w]henever a Party nomination for a public office to be filled at a general or special election is not made at a primary election or by judicial nominating convention, . . . such nomination shall be made by the appropriate District Committee if for a public office to be filled by the voters of a political subdivision wholly or partly

contained within, but embracing only a part of, the County of New
York or Borough of Manhattan . . . .

(Doc 104 Ex. A; Doc 122 Ex. A.)

II.     The Special Election to Fill Assemblyman Sheldon Silver's Seat

On November 30, 2015, New York State Assembly Member Sheldon Silver was
convicted of several felonies and forced to vacate his office as Assembly Member for the 65th
Assembly District.  (Defs.' 56.1 ¶11; Doc 121, Pl.'s 56.1 Resp. ¶11; Doc 128.)  On January 30,
2016, New York Governor Andrew Cuomo, pursuant to Section 42 of the New York Public
Officers Law, ordered a special election to fill the vacated seat to occur on April 19, 2016. (Defs.'
56.1 ¶11; Doc 121, Pl.'s 56.1  Resp. ¶11; Doc 128, see Pl.'s Reply Affirmation Ex. M; Doc 126.)

To nominate a candidate for the special election from the Democratic Party, the
MDP called a meeting of the 65th Assembly District County Committee for February 7, 2016.
(Defs.' 56.1 ¶13; Doc 121, Pl.'s 56.1 Resp. ¶13; Doc 128.)   Mr. Bal informed the County
Committee he would like to be a candidate for the nomination, and was given a list of all County
Committee members of the 65th Assembly District on December 31, 2015.  (Defs.' 56.1 ¶14; Doc
121, Pl.'s 56.1 Resp. ¶14; Doc 128.)  At least four other candidates also competed for the party's
nomination.  (Defs.' 56.1 ¶16; Doc 121, Pl.'s 56.1 Resp. ¶16; Doc 128.)  Three of the at least four
other candidates were District Leaders at the time of their candidacy.  (Defs.' 56.1 ¶16; Doc 121,
Pl.'s 56.1 Resp. ¶16; Doc 128.)

On or about February 1, 2016, Mr. Bal withdrew his candidacy for the party
nomination.  (Defs.' 56.1 ¶17; Doc 121, Pl.'s 56.1 Resp. ¶17; Doc 128.)  At the February 7, 2016
meeting of the County Committee members for the 65th Assembly District, one of the other
candidates received a plurality of the votes and was declared the Democratic Party nominee.
(Defs.' 56.1 ¶19; Doc 121, Pl.'s 56.1 Resp. ¶19; Doc 128.)   That nominee, Ms. Alice Cancel, won

the special election held on April 19, 2016. (Defs.' 56.1 ¶22; Doc 121, Pl.'s 56.1 Resp. ¶22; Doc 128.)

III.    <u>Mr. Bal's Claims</u>

Mr. Bal alleges in his Complaint that the processes for the designation as the Democratic Party nominee for the special election violated his First and Fourteenth Amendment rights in several ways. He alleges that at least 129 of the 186 County Committee members tasked with nominating were not residents of the 65th district they claimed to represent, in violation of Rules and Regulations Article II(2), and that their votes were therefore improperly cast. (Compl. ¶¶30−32.) Mr. Bal further alleges that the MDP "unreasonably delayed providing the list of committee members to [him]" in violation of the Rules and Regulations while the list "was available at all times to [the three] District Leaders who were competing against [Mr. Bal] . . . for the Democratic nomination." (Compl. ¶¶34−35 (citing Rules and Regulations Art. II(4)(d).) He claims that three democratic clubs who endorsed opposing candidates made their endorsements without holding a "secret ballot of the members of the organization," in violation of Rules and Regulations Article V(6)(b)(iv). (Compl. ¶39.) He also claims that the MDP "refused to provide [him] with the Rules and Regulation[s], including amendments," along with nominating process information including a proxy vote form and procedures related to weighted voting (Compl. ¶¶44, 46 (citing Rules and Regulations Art. V(10)), and that he was "disinvited" by Ms. McCadden from a January 7, 2016 meeting held to discuss the parameters of the nomination process "as a tactic to keep him uninformed," (Compl. ¶46.) Mr. Bal further alleges that the MDP failed to investigate and respond to several complaints he filed about the MDP's withholding of election information. (Compl. ¶53.) Taken together, these actions placed "insurmountable burdens . . . upon plaintiff by

[the] MDP that suppressed his constitutional rights to democratically campaign for public office . . . ." (Compl. ¶58.)[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).

It is the initial burden of the movant to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief, and the evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "A dispute regarding a material

---

[2] Plaintiff, in his Memorandum of Law in Support of Motion for Summary Judgment, alleges several additional claims for deprivation of his Constitutional rights that occurred after he filed this lawsuit in March 2016. See, e.g., Doc 105 at 13−16 (alleging members of the MDP failed their "duty to investigate" Mr. Bal's complaints submitted in June 2016, May 2017, and April 2018), 19 (alleging plaintiff was deprived of his right to meaningfully compete in elections held in September 2016 and November 2017). Plaintiff improperly filed an amended pleading without first seeking leave to amend. Magistrate Judge Debra Freeman, to whom the case had been referred, ordered the pleading stricken. (Order, Doc 60.) Although Judge Freeman's ruling was without prejudice to the filing of a motion to amend, plaintiff never sought leave to amend. "Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions" at the summary judgment stage. DBT Gmbh v. J.L. Mining Co., 544 F. Supp. 2d 365, 376 n.2 (S.D.N.Y. 2008) (internal quotation marks and citation omitted); see Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (similar); see also Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006) ("[A] district court does not abuse its discretion when it fails to grant leave to amend a complaint without being asked to do so."). Accordingly, the Court will not consider these additional allegations.

fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (internal citation omitted); see Anderson, 477 U.S. at 249−50 (stating summary judgment may be granted if the opposing evidence is "merely colorable" or "not significantly probative"). Courts review pro se pleadings liberally and interpret pro se pleadings "to raise the strongest arguments that they suggest." See, e.g., Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citations omitted). "This is especially true in the summary judgment context, where a pro se plaintiff's claims are subject to a final dismissal." Bodie v. Morgenthau, 02 cv 7697 (PKC), 2006 WL 357822, at *2 (S.D.N.Y. Feb. 16, 2006); see Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.") (citation omitted). "Nevertheless, pro[]ceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment . . . ." Wyatt v. Lightstone, 06 cv 6925 (PKC), 2008 WL 344713, at *2 (S.D.N.Y. Feb. 5, 2008).

"When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, in each case construing the evidence in the light most favorable to the non-moving party." TufAm., Inc. v. Codigo Music LLC, 162 F. Supp. 3d 295, 313 (S.D.N.Y. 2016) (quoting Peterson v. Kolodin, 13 cv 793 (JSR), 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013)); see Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). "The Court is not

required to resolve the case on summary judgment merely because all parties move for summary judgment." TufAm., 162 F. Supp. 3d at 313 (citing Morales, 249 F.3d at 121).

DISCUSSION

Defendants argue that plaintiff has failed to exhaust state administrative remedies, failed to identify a person or entity who acted under color of state law, and failed to allege a Constitutional violation. For the reasons discussed below, the Court finds the first two arguments unpersuasive. However, the Court holds that defendants are entitled to summary judgment because no reasonable fact finder could conclude that the issues in the nomination process described by Mr. Bal rise to the level of a federal Constitutional violation.

I.      Plaintiff Was Not Required to Exhaust State Remedies

Defendants argue that "plaintiff has failed to exhaust his state remedies requiring dismissal." (Defs.' Summ. J. Mem. at 10; Doc 123) (capitalization omitted). Specifically, defendants contend that Mr. Bal could have proceeded in New York State court through an expedited procedure to petition for a reconvening of the nominating vote. (Id. at 12; Doc 123.) Because he did not do so, defendants argue, Mr. Bal cannot now proceed in the first instance in a federal court.

The Supreme Court has "stated categorically that exhaustion is not a prerequisite to an action under § 1983 . . . ." Patsy v. Bd. of Regents, 457 U.S. 496, 500−01 (1982); see Felder v. Casey, 487 U.S. 131, 146−50 (1988) (striking down a notice provision that imposed a state administrative remedy exhaustion requirement on plaintiffs bringing section 1983 claims and discussing reasons why exhaustion is not required). The Second Circuit has interpreted the Supreme Court's directive in Patsy as a "categorical statement that exhaustion is not required" and adoptive of "the expansive view of the federal courts in protecting constitutional rights allow[ing]

plaintiffs to seek relief under [section] 1983 without first resorting to state administrative procedures." Doe v. Pfrommer, 148 F.3d 73, 78 (2d Cir. 1998); see Ross-Caleb v. City of Rochester, 512 F. App'x 17, 17−18 (2d Cir. 2013); Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 468 n.12 (2d Cir. 2006) (Sotomayor, J.); Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) (Sotomayor, J.) (similar).

"[Section] 1983 contains no exhaustion requirement beyond what Congress has provided." Heck v. Humphrey, 512 U.S. 477, 483 (1994); see Roach, 440 F.3d at 56 ("[E]xhaustion is necessary only where Congress specifically requires it, either explicitly or implicitly."). Congress has neither explicitly nor implicitly required exhaustion of state remedies to bring section 1983 claims under the First or Fourteenth Amendments outside of the context of prisoner suits. See Porter v. Nussle, 534 U.S. 516, 524−32 (2002) (discussing Congressional intent for exhaustion of prisoners' section 1983 suits under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a)); Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 152−53 (2d Cir. 2010) (no exhaustion requirement for Fourteenth Amendment due process claims brought by non-prisoner under section 1983); Wilbur v. Harris, 53 F.3d 542, 544−45 (2d Cir. 1995) (no exhaustion requirement for First Amendment claims brought under section 1983 in a labor relations context); Lefebvre v. Morgan, 234 F. Supp. 3d 445, 448, 460 (S.D.N.Y. 2017) (no exhaustion requirement for First and Fourteenth Amendment claims brought by non-prisoner under section 1983).

Defendants appear to concede that "federal courts have not, in cases like this, barred consideration of [the] case . . . ." (Defs.' Summ. J. Mem. at 10; Doc 123.) They cite McNeese v. Board of Education for Community Unit School District 187, Cahokia, Ill., 373 U.S. 668, 673 (1963), for the proposition that district courts may in their discretion require exhaustion where a

case involves local law. (Id. at 11; Doc 123.) While the issue of whether state remedies exist for claims alleging violations of the First and Fourteenth Amendments "goes to whether a constitutional violation has occurred at all[, e]xhaustion simpliciter is analytically distinct . . . ." Rivera-Powell, 470 F.3d at 468 n.12 (internal quotation marks omitted); see Chase Grp. All., 620 F.3d at 153 (similar). As stated below, see infra Section III, the failure of plaintiff to avail himself of adequate procedural remedies offered by the state is fatal to the merits of his procedural due process and right to association claims, but not on the basis of exhaustion.

II.     Plaintiff Has Adequately Alleged State Action

Defendants assert that their actions did not occur under color of state law as required pursuant to section 1983. Section 1983 creates a civil cause of action against a party "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. There are two requirements to maintain a section 1983 action. First, "[t]he conduct at issue 'must have been committed by a person acting under color of state law . . . .'" Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)). Second, the conduct "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Id. (quoting Pitchell, 13 F.3d at 547). "If the challenged conduct . . . constitutes state action . . . , then that conduct was also action under color of state law and will support a suit under [section] 1983." Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982). Section 1983 does not create a right,

rather, it "simply provides a mechanism for enforcing a right or benefit established elsewhere." Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 159 (2d Cir. 2005).

For all alleged acts in violation of the Constitution that Mr. Bal raises, the MDP, NYCDC, and defendant-employees were acting "under color of state law." Pitchell, 13 F.3d at 547. The Supreme Court has held, in a case involving requirements for political party nominations to California public office, that "when a State prescribes an election process that gives a special role to political parties, it 'endorses, adopts and enforces the discrimination . . .' that the parties . . . bring into the process—so that the parties' discriminatory action becomes state action . . . ." Cal. Democratic Party v. Jones, 530 U.S. 567, 573 (2000) (citation omitted) (quoting Smith v. Allwright, 321 U.S. 649, 664 (1944)); see id. at 573 n.4 ("[W]hen the election determines a party's nominee it is a party affair as well, and . . . the constitutional rights of those composing the party cannot be disregarded."); see also N.Y. State Bd. of Elections v. Lopez Torres, 552 U.S. 196, 203 (2008) ("[A political party's] rights are circumscribed . . . when the State gives the party a role in the election process — as New York has done . . . by giving certain parties the right to have their candidates appear with party endorsement on the general-election ballot. Then, for example, the party's racially discriminatory action may become state action . . . ."); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978) ("While the Constitution protects private rights of association and advocacy with regard to the election of public officials . . . the conduct of the elections themselves is an exclusively public function."); Nixon v. Condon, 286 U.S. 73, 82, 89 (1932) (state delegation to party committees of the power to prescribe the qualifications of its members for voting or other participation deemed state action). The Second Circuit has similarly stated that, while political parties' "conduct of its internal party affairs which have no direct relation to the electoral process" are not actions under color of state law, "where committeemen

perform public electoral functions (e.g., the nomination of candidates to fill vacancies or to run in special elections . . . ), however, the county committee is . . . unquestionably playing an integral part in the state scheme of public elections," and must follow the limits of the Constitution accordingly. Seergy v. Kings Cty. Republican Cty. Comm., 459 F.2d 308, 314 (2d Cir. 1972) (citation omitted).

        In Montano v. Lefkowitz, the Second Circuit stated even more clearly that "New York's delegation to the various parties of the right to nominate candidates for special elections, Election Law §§ 6-114, 6-116, 6-156, renders the party selection process state action." 575 F.2d 378, 383 (2d Cir. 1978) (citing Terry v. Adams, 345 U.S. 461 (1953); Smith, 321 U.S. 649); id. at 383 n.7 ("[W]e join with most commentators and many lower courts in holding that when the state grants political parties the right to nominate candidates and then gives those nominees special access to the ballot, the parties' procedures constitute state action." (internal quotation marks and citation omitted)); see Mrazek v. Suffolk Cty. Bd. of Elections, 630 F.2d 890, 894 n.8 (2d Cir. 1980) (positing that "nomination procedures of established political parties are an integral part of the election process because their nominees . . . are guaranteed a place on the ballot at the general election"); Gilder v. Gulino, 15 cv 4094 (KAM)(RER), 2016 WL 8711115, at *2, *3 n.3 (E.D.N.Y. Sept. 30, 2016) (district committee action pursuant to N.Y. Election Law section 6-114 action under color of state law); Thompson v. Rizzitelli, 10 cv 71 (JBA), 2011 WL 1215190, at *3−4 (D. Conn. Mar. 29, 2011) (town committee candidate endorsement pursuant to Connecticut election law action under color of state law); Yassky v. Kings Cty. Democratic Cty. Comm., 259 F. Supp. 2d 210, 216 (E.D.N.Y. 2003) (County Committee rule on qualifying signatures for election ballots actionable under section 1983).

Defendants primarily rely on three cases to support their argument, all of which are distinguishable.  First, they rely on Fulani v. McAuliffe, 04 cv 6973 (LAP), 2005 WL 2276881 (S.D.N.Y. Sept. 19, 2005).  But Fulani was a challenge to actions taken by various individuals and national political parties to allegedly "impede the development of a third national political party." Id. at *1 (internal quotation marks omitted).  As the Second Circuit has stated, "challenges to national party rules" and actions are distinguishable from state party or committee actions. Rockefeller v. Powers, 74 F.3d 1367, 1375 n.12 (2d Cir. 1995).  In addition, the defendants in Fulani were alleged to have engaged in state action only because "public funds [we]re being used in furtherance of [a] conspiracy" to promote the national Democratic Party's convention and, as the district court there stated, "the Supreme Court has held that mere receipt of public funds is insufficient to transform private entities or individuals into state actors."  2005 WL 2276881, at *5 (internal quotation marks omitted) (citing Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982)).  By contrast, Mr. Bal has asserted various disparities with respect to the nomination vote that resulted from the state's explicit instruction that state political parties develop their own rules to nominate candidates to appear on a special election ballot.

Second, defendants rely on Democratic Party of the United States v. Wisconsin ex rel. La Follette, 450 U.S. 107 (1981).  In Wisconsin ex rel. La Follette, the Supreme Court ruled that the state of Wisconsin could not interfere with the First and Fourteenth Amendment rights of a national political party to associate in a manner it chose by requiring the national party to seat certain members at its convention in contravention of the national party's rules.  Id. at 123−24. Wisconsin ex rel. La Follette did not discuss the requirements for action under color of state law; it was brought as an appeal from a state Supreme Court under 28 U.S.C. § 1257.  Moreover, it also alleged violations with respect to national political party rights and is otherwise distinguishable

because the current case "does not concern a state's effort to tell a party how to conduct its affairs." Rockefeller, 74 F.3d at 1375 n.12.

Third, defendants rely on De La Fuente v. Iowa Democratic Party, 16 cv 31 (SMR)(HCA), 2016 WL 9224895 (S.D. Iowa May 10, 2016), a case in which a plaintiff brought suit alleging state law claims of misrepresentation of material fact and breach of implied contract against state officials and the Iowa Democratic Party. Id. at *7. There, the district court held that the plaintiff did not allege deprivation of rights, privileges or immunities secured by the Constitution or laws of the United States, as required by the second prong of the test to bring section 1983 claims; the issue of whether defendants acted under color of state law was not addressed. Id.[3]

Mr. Bal has adequately alleged that certain of defendants' actions were under color of state law. Thus, he has met the first requirement of section 1983.

III. **Plaintiff Has Not Plausibly Alleged a Deprivation of Rights, Privileges or Immunities Secured by the Constitution or Laws of the United States**

Defendants assert that Mr. Bal's allegations do not rise to the level of constitutional violations. "Only in extraordinary circumstances will a challenge to a state [or local] election rise to the level of a constitutional deprivation." Shannon v. Jacobowitz, 394 F.3d 90, 94 (2d Cir. 2005) (internal quotation marks omitted) (alterations in original). The conduct Mr. Bal complains of is not such an extraordinary circumstance.

i. Fourteenth Amendment Due Process Claim

Mr. Bal alleges that defendants violated his due process rights by depriving him of the opportunity to campaign for the Democratic Party's nomination and to compete to have his

---

[3] In De La Fuente, the Court also dismissed the section 1983 claims on the basis of insufficient pleading because plaintiff had not put defendant on notice that he was being sued in his individual capacity for money damages. See id. at *8. Defendants in this case do not refer to the alternative notice argument from De La Fuente. (Doc 123.)

name placed on the ballot as an endorsed member of the Democratic Party. (Compl. ¶61.) The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV. The Due Process Clause protects against deprivations of constitutionally protected rights without due process of law. See Rivera-Powell, 470 F.3d at 464. "In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061−62 (2d Cir. 1993).

The right to hold an elected office is not a right protected by the Fourteenth Amendment. See Snowden v. Hughes, 321 U.S. 1, 7 (1944). "An individual has no property or liberty interest in an elected office. Nor does he have such an interest in being elected, or in appearing on a ballot." Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 194 (E.D.N.Y. 2013) (internal quotation marks and citation omitted); see Leroy v. N.Y. City Bd. of Elections, 793 F. Supp. 2d 533, 537 (E.D.N.Y. 2011); McMillan v. N.Y. State Bd. of Elections, 10 cv 2502 (JG)(VVP), 2010 WL 4065434, at *8 (E.D.N.Y. Oct. 15, 2010), aff'd, 449 F. App'x 79 (2d Cir. 2011) (summary order); Emanuele v. Town of Greenville, 143 F. Supp. 2d 325, 333 (S.D.N.Y. 2001); Cornett v. Sheldon, 894 F. Supp. 715, 725−26 (S.D.N.Y. 1995) (similar). As the Supreme Court has stated, "the mere fact that a State's system creates barriers tending to limit the field of candidates from which voters might choose does not of itself compel close scrutiny." Burdick v. Takushi, 504 U.S. 428, 433 (1992) (internal quotation marks and alterations omitted); see Powell v. Power, 436 F.2d 84, 88 (2d Cir. 1970) ("[T]he due process clause . . . offer[s] no guarantee against errors in the administration of an election.").

Mr. Bal has not alleged that any regulation or restriction itself placed unconstitutional burdens on his ability to compete for a nomination in the special election. Rather,

he challenges the actions of the MDP and its officials for their alleged failure to abide by their own Rules and Regulations. Mr. Bal alleges that his ability to campaign for a nomination for the special election was unconstitutionally burdened because the MDP and its named employees, in violation of their Rules and Regulations, (1) withheld the list of County Committee members until December 31, 2015, (Compl. ¶36), (2) withheld the Rules and Regulations and never made available amendments to the Rules and Regulations (Compl. ¶¶35, 43−44), (3) never made available copies of proxy voting forms or lists of weighted vote totals (Compl. ¶46), (4) failed to publicize the election (Compl. ¶¶20−23), (5) improperly filled vacancies on the County Committee with individuals who did not live in the election district (Compl. ¶¶29−30), and (6) allowed certain Democratic Clubs in the 65th Assembly District to improperly endorse nominees (Compl. ¶¶37−41.) He provides evidence of deposition testimony of Mr. Wright and Ms. McCadden in which they state they do not know if it was their responsibility to ensure that potential nominees for a special election had access to relevant electoral information. (Pl.'s Reply Affirmation Exs. C, D, E, H, L; Doc 126.) He further provides evidence in the form of press clippings and online postings with quotes stating that the partisan system of nomination in New York "denies voters a real choice," (Compl. Ex C), "is not fair," (Compl. Ex. L), and has "an odor emanating from the process" (Compl. Ex N), and email correspondence between himself and Ms. McCadden showing requests for information and postponed responses (Compl. Exs E, F, H, I, Q, R, S.)

Even if Mr. Bal was deprived of some property or liberty interest, no reasonable fact finder could conclude that the MDP's actions violate Mr. Bal's due process rights.[4] "[T]o

---

[4] The Court makes no determination as to any possible cognizable liberty or property interest that Mr. Bal could allege. The Court further notes that several of the Rules and Regulations Mr. Bal claims have been violated by the MDP do not impose the requirements alleged by Mr. Bal. <u>Compare</u> Compl. ¶¶36, 37−41, <u>with</u> Rules and Regulations Art. II(4)(d) ("The Secretary . . shall prepare and maintain a list of the names and addresses of the members of the County Committee and of the Executive Committee . . . ."); Art. V(6)(b)(iv) (requiring Democratic organizations to "<u>have a written constitution</u> which provides . . . that endorsement of all candidates for party position or public office in the party primary be by a secret ballot of the members of the organization") (emphasis added).

determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Rivera-Powell, 470 F.3d at 465 (quoting Zinermon v. Burch, 484 U.S. 113, 126 (1990)). The Supreme Court has distinguished between "claims based on established state procedures," and "claims based on random, unauthorized acts by state employees." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (citing Hudson v. Palmer, 468 U.S. 517, 532 (1984) and Parratt v. Taylor, 451 U.S. 527, 541 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). If state conduct is random and unauthorized, "the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." Rivera-Powell, 470 F.3d at 465. If state conduct is pursuant to an established state procedure, "the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." Id. The space between random and established state conduct has been described as a "legal thicket." Locurto v. Safir, 264 F.3d 154, 173 (2d Cir. 2001). For example, the Second Circuit has held that "acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct . . . ." Rivera-Powell, 470 F.3d at 465−66 (quoting Velez v. Levy, 401 F.3d 75, 91−92 & nn.14 & 15 (2d Cir. 2005)). But see Dekom v. Nassau Cty., 595 F. App'x 12, 14 (2d Cir. 2014) (summary order) (stating that state action by county board of elections allegedly violating "New York law and local party policies and procedures" was "random and unauthorized" conduct requiring only a post-deprivation hearing). Like in Rivera-Powell, the Court need not categorize the alleged unlawful conduct here to determine that, under either categorization, defendants are entitled to summary judgment on Mr. Bal's Fourteenth Amendment due process claim. See Rivera-Powell, 470 F.3d at 466.

The Supreme Court, in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976), listed three factors to balance in determining whether a plaintiff was afforded due process — "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional process . . . would entail." <u>See Goldberg v. Kelly</u>, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a mea[n]ingful manner.") (internal quotation marks and citation omitted). It is irrelevant whether or not a plaintiff actually avails himself of the due process afforded by a state in order for the process to lawfully suffice pursuant to the Fourteenth Amendment. <u>See Rivera-Powell</u>, 470 F.3d at 467 n.9; <u>Chambliss v. Westchester Cty. Dep't of Social Servs.</u>, 17 cv 3019 (CM), 2017 WL 4350600, at *1 (S.D.N.Y. June 12, 2017); <u>Dekom v. Nassau Cty.</u>, 12 cv 3473 (JS)(ARL), 2013 WL 5278019, at *8 (E.D.N.Y. Sept. 18, 2013), <u>aff'd</u>, 595 F. App'x 12 (2d Cir. 2014) (summary order).

The Second Circuit's holding in <u>Rivera-Powell</u> is fatal to Mr. Bal's claim. In <u>Rivera-Powell</u>, the Second Circuit ruled that New York Election Law provided adequate due process for a candidate challenging electoral irregularities under the Fourteenth Amendment based on two opportunities for an objection to be heard. First, Ms. Rivera-Powell received "at least some form of pre-deprivation hearing . . . when the Board [of Elections] considered" an objection filed by a registered voter in relation to her nomination pursuant to New York Election Law § 6-154. 470 F.3d at 466; <u>see id.</u> at 463.[5] Second, and "[m]ore importantly," Election Law § 16-102

---

[5] N.Y. Election Law § 6-154 allows any registered voter registered to vote for the public office at issue with objection to any party's designating or nominating petition or petition for opportunity to ballot for public office to make "[w]ritten objections . . . within three days after the filing of the petition or certificate to which objection is made.

allowed Ms. Rivera-Powell to obtain "full judicial review by way of a special proceeding . . . ." Id. at 466−67; see N.Y. Election Law § 16-102. Taken together, these remedies provided adequate due process for a candidate challenging electoral irregularities under the Fourteenth Amendment. Id. at 467−68. Courts following Rivera-Powell have categorized the expedited review provided by N.Y. Election Law § 16-102 as both pre- and post-deprivation review adequate to satisfy due process concerns. See Murawski v. Pataki, 514 F. Supp. 2d 577, 586 n.5 (S.D.N.Y. 2007) ("Even in the absence of an opportunity to be heard prior to a [Board of Elections] decision, however, the statutory provision for an expedited review of that determination by the New York Supreme Court provides adequate pre-deprivation review and satisfies due process requirements.") (citing Cornett, 894 F. Supp. at 727); see also Leroy, 793 F. Supp. 2d at 539−40 ("[T]he § 16-102 special proceeding should be considered pre-deprivation review.").

Mr. Bal's case is not materially different than Ms. Rivera-Powell's. He had the same two possibilities pursuant to New York Election Law to challenge the proposed nomination of Ms. Cancel following the February 7, 2016 vote and the Board's acceptance of her nomination as the Democratic Party candidate. See N.Y. Election Law §§ 6-154, 16-102.[6] Mr. Bal was afforded an additional avenue of review beyond that of Ms. Rivera-Powell, which he pursued, in the form of a complaint to the Division of Election Law Enforcement. See N.Y. Election Law § 3-104(3) (as amended June 29, 2014) ("Upon receipt of a complaint and supporting information alleging any violation of this chapter . . . the [C]hief [E]nforcement [C]ounsel shall determine if

. . . . [S]pecifications of the grounds of the objections shall be filed within six days thereafter with the same officer or board . . . ." See also N.Y. Comp. Codes R. & Regulations. tit. 9, § 6204.1.

[6] In Rivera-Powell, the plaintiff and her attorney attended a hearing under N.Y. Election Law § 6-154. 470 F.3d at 466. N.Y. Election Law § 6-154 does not guarantee the right to an in-person hearing. Given that due process for pre-deprivation rights requires only "notice," "an explanation of the nature of . . . evidence," and "an opportunity for the [aggrieved individual] to respond" in situations like this where "a full adversarial hearing before a neutral adjudicator" is provided post-deprivation," Locurto, 264 F.3d at 174, whether Mr. Bal would have received an in-person hearing if he had objected to the nomination pursuant to section 6-154 is immaterial.

an investigation should be undertaken. . . . Such analysis shall include the following: first, whether the allegations, if true, would constitute a violation of this chapter and, second, whether the allegations are supported by credible evidence.").  Mr. Bal submitted a complaint to the Chief Enforcement Counsel of the Division of Election Law Enforcement on February 18, 2016, along with earlier email correspondence with a public relations deputy director of the New York State Board of Elections. (Compl. Ex. W.) The Chief Enforcement Counsel responded by email with an analysis of why Mr. Bal had not alleged a violation of New York Election Law, after considering Mr. Bal's evidence and supporting documents. (Compl. Ex. W.)  Mr. Bal did not seek additional review by means of N.Y. Election Law §§ 6-154 or 16-102.  (Def.'s 56.1 ¶¶20−21; Doc 121, Pl.'s 56.1 Opp. ¶¶20−21; Doc 128).

Although he did not avail himself of either opportunity, that is of no moment in evaluating whether he was afforded due process of law.  See Rivera-Powell, 470 F.3d at 467 n.9; Shannon, 394 F.3d at 97 (urging caution against "federal intervention" into state and local elections where "there is no due process violation, and where a state law remedy exists but plaintiffs refused to test it").   Where, as here, "despite the existence of a comprehensive and expeditious state court process which attempts to adjudicate election law disputes promptly, the plaintiff seeks to open a second avenue of review," a grant of summary judgment dismissing plaintiff's due process claims is appropriate.  Cornett, 894 F. Supp. at 727.

Mr. Bal informs the Court that he has brought this action "as a result of the appearance of a conflict-of-interest," because the MDP "has continued influence" over "[n]early every justice in the N[ew] Y[ork] S[tate] Supreme Court."  Compl. ¶57.  To the extent that this is a separate attempt to allege a due process violation, this too must fail.  Mr. Bal offers no evidence for the statement that process afforded in state court would not be fair and impartial, and, having

failed to avail himself of any avenues for relief in state court, his allegations are conclusory and without factual support. Unsupported and conclusory assertions will not defeat an otherwise meritorious motion for summary judgment. Anderson, 477 U.S. at 248.

ii.     First Amendment Associational Rights Claim

Mr. Bal next alleges that defendants have infringed his First Amendment right to campaign and compete for the Democratic Party's nomination. The specific allegations giving rise to the First Amendment claim are the same as those giving rise to Mr. Bal's Fourteenth Amendment Due Process claim. See Compl. ¶¶60−63.

Unlike Fourteenth Amendment due process rights, First Amendment rights are "not automatically defeated by a finding that the state provided adequate process." Rivera-Powell, 470 F.3d at 468. However, "when a candidate raises a First Amendment challenge to his or her removal from the ballot based on the allegedly unauthorized *application* of an admittedly valid restriction, the state has satisfied the First Amendment if it has provided due process." Id. at 469; Martins v. Pidot, 663 F. App'x 14, 17 (2d Cir. 2016) (summary order); Tiraco, 963 F. Supp. 2d at 197−98 (similar). Like in Rivera-Powell, Mr. Bal's Fourteenth Amendment due process claim and First Amendment claims are "inextricably intertwined." 470 F.3d at 468. Mr. Bal does not allege any additional deprivation of his First Amendment interests separate from that which forms the basis of his due process claim. He does not challenge, for example, the law allowing parties to nominate special election candidates based on their own rules, N.Y. Election Law § 6-114, the laws granting review of nomination challenges by the state court and the Board of Elections, N.Y. Election Law §§ 16-102, 6-154, or any of the MDP's Rules and Regulations that governed the process leading up to the nomination. See id. at 468−69 (discussing lack of challenges to state's laws as evidence of indistinguishable First and Fourteenth Amendment claims).

The Supreme Court has held that the First Amendment does not give individuals the right to "a 'fair shot' at winning [a] party's nomination." Lopez Torres, 552 U.S. at 205. Where a plaintiff challenges a state's decision "as contravening a law or regulation whose validity the plaintiff does not contest, there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality." Rivera-Powell, 470 F.3d at 469. Because the Court has already upheld the state's due process, see supra Section III(i), Mr. Bal's First Amendment claim fails, see Gilder, 2016 WL 8711115, at *4 (dismissing First Amendment claims where plaintiff-candidate alleged no facial challenge to election laws and did not otherwise challenge his ability to receive adequate due process); Dekom, 2013 WL 5278019, at *8 (same).

Mr. Bal's claims also do not raise Constitutional concerns with his ability to access the general election ballot. He was in no way precluded from obtaining the required signatures or third-party endorsement to have his name placed on the election ballot without the Democratic Party's backing, as at least one colleague of his did after dropping out of the nomination process. See N.Y. Election Law §§ 6-142, 6-158(9) (detailing independent nomination procedures); Compl. Exs. N, P; Doc 2 (discussing candidate Yuh-Line Niou's abandonment of the Democratic Party nomination process and endorsement by a third-party). The Supreme Court has held that a state's vital and compelling interests in preserving the integrity of the election process and regulating the number of candidates to avoid voter confusion permits it to uphold different requirements to obtaining ballot access based on party affiliation. See Am. Party of Tex. v. White, 415 U.S. 767 781−84 & nn.13−14 (1974).

### iii.    Fourteenth Amendment Equal Protection Claim

Finally, Mr. Bal argues that the MDP denied him equal protection of the laws based on his status as a non-District Leader.  He alleges that the MDP "unreasonably delayed providing the list of committee members," which was "available at all times to District Leaders . . . who were competing against plaintiff," and this action "suppress[ed] candidate competition." (Compl. ¶¶34-35.)[7]

The Equal Protection Clause of the Fourteenth Amendment directs that similarly situated individuals be treated alike.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "To prove an equal protection violation, [a plaintiff] must prove purposeful discrimination, directed at an identifiable or suspect class."  Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (first citing McCleskey v. Kemp, 481 U.S. 279, 292 (1987), then citing Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 457−58 (1988)).  "[A] § 1983 action to remedy errors in the election process allegedly violating the equal protection clause does not exist unless the state action constituted intentional or purposeful discrimination."  Gold v. Feinberg, 101 F.3d

---

[7] Mr. Bal makes two additional arguments that are unavailing.  First, he argues, for the first time in his motion for summary judgment, that defendants created an advantaged class of "Democratic Party club membership" and a disadvantaged class of Democratic Party members, including Mr. Bal, who "[we]re denied both membership in these Democratic Party clubs and rights of speech and association for political purposes with the members of these clubs." (Pl.'s Summ. J. Mem. at 24; Doc 105.)  Mr. Bal provides no evidence on any connection between the named defendants and membership into Democratic Party clubs.  He offers emails to the Committee on Ethics of the Democratic Party of the County of New York from June 2016, after the filing of this action, in which he states he was "constructively" denied membership in several Democratic clubs.  (Reply Affirmation Ex. O; Doc 126.)  The Court will not consider events that took place after the filing of this action or allegations made for the first time on summary judgment, as explained above.  See supra note 2.
Second, he argues that because the vote for the special election nominee was taken by County Committee members, and thirty-nine of them had been newly selected as of September 2015 upon recommendation of the District Leaders, see Rules and Regulations Art. II(2), those District Leaders running for nomination effectively were permitted to "stack the deck against plaintiff and other non-District Leaders that were candidates." (Compl. ¶33.)  To the extent that Mr. Bal's argument could be construed as a claim that MDP Rules and Regulations themselves are discriminatory, the Court finds this argument is not reviewable pursuant to § 1983 because it does not allege action under color of state law.  The election of County Committee members falls within the "private affairs of their political organization" that the Second Circuit has held are not subject to Constitutional limitations under § 1983.  Seergy, 459 F.2d at 313; see id. (distinguishing internal party affairs from votes whose function "is to select a nominee for public governmental office").

796, 800 (2d Cir. 1996) (internal quotation marks omitted). Allegations of intentional discrimination "without evidentiary support or allegations of particularized incidents, do[] not state a valid claim." Rivera-Powell, 470 F.3d at 470 (internal quotation marks omitted).

Although not argued by this pro se plaintiff, the Court also considers his equal protection claims under a "class of one" or "selective enforcement" theory. "[A]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out." Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601 (2008) (internal quotation marks and citation omitted); see Lanning v. City of Glens Falls, 908 F.3d 19, 29−30 (2d Cir. 2018). To allege either, a plaintiff must demonstrate differential treatment from similarly situated persons that was either without rational basis (under a "class of one" claim) or motivated by an intent to discriminate on an impermissible basis (under a "selective enforcement" claim). Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004) (describing "class of one" claims); Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995) (describing "selective enforcement" claims). "For an individual to be similarly situated, he must be, at a minimum, similarly situated in all material respects." Phillips v. City of Middletown, 17 cv 5307 (CS), 2018 WL 4572971, at *6 (S.D.N.Y. Sept. 24, 2018) (internal quotation marks omitted).[8] To survive summary judgment, a plaintiff must make more than conclusory allegations of disparate treatment or discriminatory intent. See, e.g., Okin v. Vill of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009) (granting summary judgment to defendants where plaintiff failed to "attempt[] to demonstrate discrimination by a comparison"

---

[8] Courts are in some disagreement over whether the "similarly situated" showings required for the selective enforcement and class of one analyses are identical. See, e.g. Gentile v. Nulty, 769 F. Supp. 2d 573, 580 (S.D.N.Y. 2011) (collecting cases). The Court need not decide which standard applies because plaintiff has failed to come forward with evidence which if believed could entitle a reasonable fact-finder to conclude he was treated differently from similarly situated individuals.

to similarly situated individuals and failed to "attempt . . . a comparison" of disparate treatment based on an identifiable characteristic).

Under any of the discussed standards, Mr. Bal's allegations do not raise a genuine issue of material fact. Mr. Bal argues that the Rules and Regulations were applied incorrectly by the MDP and the named defendants. Even if non-District Leader candidates could constitute an identifiable class, the Second Circuit has recognized that "[u]neven or erroneous application of an otherwise valid statute constitutes a denial of equal protection only if it represents intentional or purposeful discrimination." Powell, 436 F.2d at 88 (internal quotation marks omitted); see Gelb v. Bd. of Elections of City of New York, 224 F.3d 149, 154 (2d Cir. 2000); Westchester Cty. Indep. Party v. Astorino, 137 F. Supp. 3d 586, 620 (S.D.N.Y. 2015); Tiraco, 963 F. Supp. 2d at 199−200 (similar).

Mr. Bal has offered no evidence of defendants' intent to deprive him of his right to receive certain electioneering materials as stated in the Rules and Regulations in furtherance of his bid to secure nomination for the 2016 special election. He received a list of the County Committee members on December 31, 2015 (Defs.' 56.1 ¶14; Doc 121, Pl.'s 56.1 Resp. ¶14; Doc 128), before the MDP held any public meeting to discuss the special election (Compl. Ex. R; Doc 2), before Governor Cuomo called for a special election (Reply Affirmation Ex. M; Doc 126), and, as Mr. Bal concedes, before the District Leader candidate who eventually won the nomination submitted her name as a potential candidate for the nomination (Pl.'s Summ. J. Mem. at 9; Doc 105). Mr. Bal offers no evidence as to when the three named District Leader candidates received their lists of all County Committee members. He offers no evidence for the proposition that any delay in sending him the list of County Committee members was intentional or purposeful. His email correspondence with Ms. McCadden shows only that he spoke with Ms. McCadden on or around

December 15, 2015 (Compl. Ex. D), followed up to ask for a list of County Committee members on December 19, 2015, (Compl. Ex. E), spoke with her again on sometime between December 29 and December 31, 2015 (Compl. Ex. H), and received the list on December 31, 2015 (Compl. Ex. K.)

With respect to a class of one or selective enforcement theory, Mr. Bal makes no mention of any similarly situated individuals who may have been treated differently. He does not argue, for example, that the District Leader candidates were similarly situated and, as stated above, even if they were similarly situated, he does not offer evidence showing that these candidates received any electioneering materials before he did, or otherwise were intentionally treated differently by the MDP or treated differently without a rational basis. Given this lack of evidence, Mr. Bal's claims cannot survive a motion for summary judgment. See Seabrook v. City of New York, 509 F. Supp. 2d 393, 400−02 (S.D.N.Y. 2007) (dismissing equal protection claims that failed to allege similarly situated individuals treated differently or intentional discrimination and collecting cases); Bodkin v. Garfinkle, cv 05-4306, 2007 WL 1288078, at *6−7 (E.D.N.Y. Apr. 30, 2007) (granting summary judgment to defendants on claim alleging violations of the Equal Protection clause by a county board of elections for lack of evidence).

Mr. Bal's complaint holds some parallels to the alleged violations found wanting in New York State Board of Elections v. Lopez Torres, 552 U.S. 196 (2008). In Lopez Torres, respondents challenged New York Election Law's provision that allowed candidates nominated by political parties to have their names appear on the general election ballot for state Supreme Court races with fewer signatures on their nominating petitions than those required for independent candidates and candidates of political organizations that failed to meet the vote threshold for "party" status. Id. at 201−02. In upholding the law against several Constitutional challenges, the

Supreme Court characterized respondents' argument as a complaint that "[t]he party leadership . . . inevitably garners more votes for its slate of delegates . . . than the unsupported candidate can amass for himself. And thus the leadership effectively determines the nominees." Id. at 205. The Court held that the complaint "of the voters' . . . preference for the choices of the party leadership" was "hardly a manageable constitutional question for judges," and that "[p]arty conventions, with their . . . domination by party leaders, have long been an accepted manner of selecting party candidates." Id. at 206; see id. at 205 ("Our cases invalidating ballot-access requirements have focused on the requirements themselves, and not on the manner in which political actors function under those requirements."). Mr. Bal's equal protection claim similarly asks the Court to pass judgment on the functioning of an election where certain candidates hold leadership positions and are nominated by others with leadership positions in the party. This is not the type of dispute that the Equal Protection Clause is meant to resolve. The Court grants defendants' motion for summary judgment on plaintiff's equal protection claim.

CONCLUSION

Defendants' motion for summary judgment is GRANTED in full and plaintiff's cross-motion for summary judgment is DENIED. The Clerk is directed to terminate the motions (Docs 105, 120), enter judgment for the defendants and close the action. This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good

faith and <u>in forma pauperis</u> status is denied.  <u>See Coppedge v. United States</u>, 369 U.S. 438, 444−45 (1962).

        SO ORDERED.


P. Kevin Castel
United States District Judge

Dated: New York, New York
       December 12, 2018